KAB

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Randon L. Miller,<br><br>    Plaintiff,<br><br>v.<br><br>City of Scottsdale, et al.,<br><br>    Defendants. | No.  CV-21-00834-PHX-GMS (MTM)<br><br>**ORDER** |

Plaintiff Randon L. Miller brought this civil rights action pursuant to 42 U.S.C. § 1983.  (Doc. 31.)  Defendants move for summary judgment,[1] and Plaintiff opposes.  (Docs. 33, 40, 53.)

**I. Background**

In his Fourth Amended Complaint, Plaintiff relevantly alleges as follows.  Plaintiff is the owner of Sushi Brokers restaurant in Scottsdale, Arizona.  (Doc. 31 at 3.)  Beginning in 2011, the City of Scottsdale Police Department has consistently used the Sushi Brokers parking lot to make elaborate traffic stops, complete with flashing red lights and blinding white spotlights, creating an unpleasant environment and nuisance for customers of Sushi Brokers.  (*Id.*)  After Plaintiff expressed his mounting frustration to the Scottsdale Police

---

[1] Although the Motion was originally filed as a Motion to Dismiss, the Court converted it to a Motion for Summary Judgment pursuant to Rule 12(d) of the Federal Rules of Civil Procedure.  (Doc. 38.)

Department regarding the traffic stops on his property, the traffic stops ceased for some period of time, but then began again with greater frequency. (*Id.* at 4.) Defendant Officer John Miller of the Scottsdale Police Department developed personal animus towards Plaintiff because of Plaintiff's complaints to the City of Scottsdale, and hatched a plan to have Plaintiff's liquor license revoked. (*Id.*) Officer Miller convinced now-former Arizona Department of Liquor Licenses Directors Mike Rosenberger and John Cocca to revoke Plaintiff's license to sell liquor. (*Id.*)

Miller would often "incite Plaintiff to anger and shouting obscenities at police officers," then Miller would arrest Plaintiff for disorderly conduct without probable cause, and Cocca and Rosenberger would institute revocation proceedings against Plaintiff's liquor license, all with the goal of having Plaintiff's liquor license revoked. (*Id.* at 5.) In 2013, Detective Miller led a sting operation and phony traffic stop, which led to the arrest of Plaintiff without probable cause in retaliation for Plaintiff complaining about Scottsdale police officers using his parking lot to make traffic stops. (*Id.*) During that traffic stop, Scottsdale police officers used excessive force by violently restraining Plaintiff, violently placing handcuffs on Plaintiff so tightly that injury resulted, violently placing Plaintiff into a police car, and violently throwing Plaintiff into a jail cell, which left Plaintiff with multiple injuries, including lacerations and contusions to his fingers, wrists, knee, lower legs, as well as ear and head area. (*Id.* at 5-6.) In 2014, Plaintiff was again arrested without probable cause during a liquor inspection. (*Id.* at 6.)

Supervisors Cocca and Rosenberger and Detective Miller have, without probable cause, and arising from their personal animus, instituted enforcement proceedings against Plaintiff's restaurant and liquor license on three occasions, and the final proceeding resulted in the revocation of Plaintiff's liquor license. (*Id.*) Specifically, on April 11, 2020, Officer Bailey went to Sushi Brokers for the sole purpose of talking to Plaintiff about a claim that Plaintiff's restaurant was operating in violation of an emergency order issued by the Governor Douglas Ducey relating to COVID-19 health protocols. (*Id.* at 7.) Plaintiff

yelled obscenities at the officers the entire time and when Officer Bailey was leaving, he decided to arrest Plaintiff for disorderly conduct. (*Id.* at 7-8.)

Defendant City of Scottsdale, including Officers John Miller and Christian Bailey have a policy, custom, or procedure that any officers conducting routine police activity near Sushi Brokers, whether related to Sushi Brokers or not, received immediate, automatic back-up, which exists for the purpose of "inciting Plaintiff to anger" so that Scottsdale Police Officers can arrest Plaintiff for disorderly conduct in an effort to revoke Plaintiff's liquor license. (*Id.* at 10.)

In Count One, Plaintiff alleges a First Amendment claim against Defendant Bailey based on the April 11, 2020 arrest.

In Count Two, Plaintiff alleges Fourth Amendment claims of false arrest and excessive force based on the 2013, 2014, and 2020 arrests.

In Count Three, Plaintiff alleges a *Monell* claim against the City of Scottsdale based on the alleged policy, custom, or procedure that any officers conducting routine police activity near Sushi Brokers, whether related to Sushi Brokers or not, received immediate, automatic back-up.

Defendants City of Scottsdale and Bailey move for summary judgment on the grounds that claims relating to arrests in 2013 and 2014 are barred by the statute of limitations, Plaintiff's First Amendment claim for retaliatory arrest in Count One fails because Plaintiff does not allege facts establishing a lack of probable cause for the arrest, the false arrest claim in Count Two fails because Plaintiff does not allege facts establishing a lack of probable cause, the excessive force claim in Count Two fails because the body camera footage shows that no excessive force was used, Plaintiff's attempt to bring a *Monell* claim against the City and Bailey fails because he cannot base such a claim on his own prior, isolated experiences, he has set forth no objective evidence of a retaliatory policy motivated by prior speech, and he pleads no facts showing that Officer Bailey is a final policy maker, and Plaintiff's attempts to name "Jane Doe" Defendants, and to name

Bailey in both his official and individual capacities, are improper and should be dismissed. (Doc. 33.)

## II. Summary Judgment Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at 255. The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3). . . . .

### III. Facts

On April 11, 2020, seven Scottsdale police officers went to Sushi Brokers, a restaurant owned by Plaintiff, to serve Plaintiff with a citation for violations of Arizona Revised Statutes § 26-317, a class 1 misdemeanor, for violations of the Governor's Executive Order[2] requiring that restaurants not allow on-site dining due to the threat of COVID-19. (Doc. 33-2.) Prior to the officers going to Sushi Brokers on April 11, 2020, Sergeant Adams informed Defendant Officer Bailey that on March 27, 2020 and March 28, 2020, he and other officers went to Sushi Brokers to address a prior complaint for violations of the Executive Order (DR# 20-06220), and when Adams and other officers notified Plaintiff of the violations, he became verbally aggressive, and Plaintiff was notified of the prior violations of the order on those dates. (*Id.* at 19.) On April 11, 2020, Scottsdale police officers were acting on information that on or around April 10, 2020, multiple individuals (including a Scottsdale officer) again observed the business operating at normal capacity with liquor and food being served in violation of the Governor's Executive Order. (*Id.*)

Body camera footage reflects that on April 11, 2020, one officer, Defendant Bailey, approached the restaurant, while the others maintained a distance around the restaurant. (*See* Plaintiff's non-electronic exhibits A and B.) As the police officers approached, Plaintiff screamed obscenities at them, alternately refused to sign the citation or listen to the basis for the citation, and agreed to sign the citation. (*Id.*) Throughout the encounter, Plaintiff moves freely throughout the restaurant while the officers stand outside, rarely stopping in his obscenity-laced tirade. (*Id.*) As the officers wait for Defendant Officer Bailey to fill out/complete the citation form, explain the citations to Plaintiff, and for

---

[2] *See* Office of the Governor Doug Ducey, Executive Order 2020-09, *Limiting the Operations of Certain Businesses to Slow the Spread of COVID-19*, effective March 19, 2020, *available at* https://azgovernor.gov/executive-orders. The March 19, 2020 Executive Order provided that restaurants in counties with confirmed cases of COVID-19 must close access to on-site dining until further notice, but provided that restaurants could continue to serve the public through pick up, delivery, and drive-thru operations. (*Id.*)

Plaintiff to sign it, several customers of Sushi Brokers approach a take-out window to order and/or pick up food; there is no interference from the police officers with the business and the police encourage customers to pick up their food. (*Id.*) After 25 minutes, Plaintiff completes the form, Defendant Officer Bailey leaves him a copy of the form, and the police officers begin to leave. (*Id.*) Plaintiff then approaches the side door of the restaurant, yells something else at the officers, and Bailey drops his clipboard and follows Plaintiff a short distance inside the restaurant where he grabs Plaintiff's arm, tells Plaintiff he is under arrest, and places Plaintiff in handcuffs. (*Id.*) Although Plaintiff *verbally* exclaims that he was thrown to the ground and that his glasses are in the middle of the street, this is plainly contradicted by the body camera footage of the incident; Plaintiff's glasses are on him even as he claims they are laying in the middle of the street. (*Id.*) A police officer maintains a hold on Plaintiff to assist him to the police car while he is in handcuffs; although Plaintiff complains about being touched, he evidences no apparent distress. (*Id.*)

**IV.   Discussion**

    **A.   Request for Additional Discovery**

Plaintiff argues that the Court should defer consideration of Defendants' Motion due to the early stage this case is in. Plaintiff argues that "facts essential to justify Plaintiff's opposition to Defendants' Motion are currently unavailable to Plaintiff but can be adduced through depositions and written discovery." (Doc 40 at 3.)

Under Rule 56(d), "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition," the court may issue any appropriate order, including deferring consideration of the motion for summary judgment or denying it, or allowing "time to obtain affidavits or declarations or to take discovery." Fed R. Civ. P. 56(d). The party requesting relief under Rule 56(d) must set forth in its affidavit or declaration: (1) "specific facts it hopes to elicit from further discovery," (2) that "the facts sought exist," and (3) that "the sought-after facts are essential to oppose summary judgment." *Family Home & Finance Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008) (discussing former Rule 56(f)).) "Failure

to comply with these requirements is a proper ground for denying discovery and proceeding to summary judgment." *Id.* (internal quotation marks omitted). But Rule 56(d) relief should generously be granted where a summary judgment motion is filed early in the litigation, "before a party has had any realistic opportunity to pursue discovery relating to its theory of the case." *Burlington N. Santa Fe R.R. Co. v. Assiniboine & Sioux Tribes of the Fort Peck Reservation*, 323 F.3d 767, 773–74 (9th Cir. 2003); *see Hollyway Cleaners & Laundry Co., Inc. v. Cent. Nat'l Ins. Co. of Omaha, Inc.*, 219 F. Supp. 3d 996, 1003 (C.D. Cal. 2016) (Rule 56(d) prevents the nonmovant "from being 'railroaded' by a summary judgment motion that is filed too soon after the start of a lawsuit for the nonmovant to properly oppose it without additional discovery") (citing *Celotex*, 477 U.S. at 326).

Defendants' Motion accepts all non-conclusory allegations in Plaintiff's Fourth Amended Complaint as true and relies on limited evidence at this early stage in the litigation. Although Plaintiff makes the conclusory assertion that there are facts that need to be obtained that are "essential" to responding to the Motion for Summary Judgment, Plaintiff does not set forth what specific facts he hopes to elicit from further discovery, and therefore does not show that such unidentified facts exist, and does not show why any further discovery is needed to oppose the arguments made in this specific Motion for Summary Judgment. Accordingly, Plaintiff has not met any of the factors the Court must consider in determining whether relief pursuant to Rule 56(d) is appropriate, and his request for such relief is denied.

### B. Statute of Limitations

Throughout his Fourth Amended Complaint, Plaintiff makes allegations relating to events that occurred in 2011 and two arrests that occurred in 2013 and 2014. Count Two also appears to cite the 2013 and 2014 arrests as a basis for the false arrest claims. Defendants assert that any claim arising out of these prior arrests is untimely and fails as a matter of law because they are barred by the two-year statute of limitations. Plaintiff did not respond to this argument and therefore concedes to the dismissal of those claims. *See*

LRCiv 7.2(i). Additionally, any claims relating to the 2013 and 2014 arrests are barred by the two-year statute of limitations. *See Butler v. Nat'l Cmty. Renaissance of Cal.*, 766 F.3d 1191, 1198 (9th Cir. 2014) (for claims brought pursuant to 42 U.S.C. § 1983, federal courts apply the statute of limitations governing personal injury claims in the forum state, "along with the forum state's law regarding tolling, including equitable tolling, except to the extent any of these laws is inconsistent with federal law." (citation omitted); Ariz. Rev. Stat. § 12-542 (providing that actions for personal injury in Arizona must be commenced within two years after the cause of action accrues). Accordingly, summary judgment in favor of Defendants is granted as to the part of Count Two that is based on the 2013 and 2014 arrests.

### C. Counts One and Two-Probable Cause

In Count One, Plaintiff alleges a First Amendment claim for retaliatory arrest based on the April 11, 2020 arrest and the remaining Fourth Amendment false arrest claim in Count Two is also based on the April 11, 2020 arrest. Defendants assert that they are entitled to summary judgment on both claims because there was probable cause to arrest Plaintiff for both disorderly conduct in violation of Arizona Revised Statutes § 13-2904(A)(1) and for a violation of the Governor's Executive Order in violation of Arizona Revised Statutes section § 26-317.

Generally, "the First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech." *Nieves v. Bartlett*, ___ U.S ___, 139 S. Ct. 1715, 1724 (2019) (internal citation omitted). "It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must *cause* the injury; accordingly, "[t]he plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest. *Id.*

Likewise, the Fourth Amendment requires an arrest to be supported by probable cause. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). "Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe an offense has been or is being committed

by the person being arrested." *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007). Moreover, probable cause need only exist for any crime that can be charged under the circumstances. *See, e.g.*, *Blankenhorn v. City of Orange*, 485 F.3d 463, 473 (9th Cir. 2007) ("It doesn't matter for present purposes if [plaintiff] was charged with a different crime than that for which he was arrested. . . . Probable cause need only exist as to any offense that could be charged under the circumstances."); *Barry v. Fowler*, 902 F.2d 770, 773 (9th Cir. 1990) (where plaintiff "was arrested only once, albeit for two different crimes," plaintiff's "single 'seizure' was not unconstitutional, even if [the police officer] lacked probable cause to arrest her for public drunkenness").

Defendants assert that there was probable cause to arrest Plaintiff for a violation of Arizona Revised Statutes § 26-317—Emergency Management Violation—because on or around April 10, 2020, multiple individuals (including a Scottsdale officer) observed Sushi Brokers operating at normal capacity with liquor and food being served. The Governor's Executive Order 2020-09 provided that "[p]rior to any enforcement action being taken to enforce this Order in accordance with A.R.S. § 26-317, a person shall be notified and given an opportunity to comply." Office of the Governor Doug Ducey, *Limiting the Operations of Certain Businesses to Slow the Spread of COVID-19*, effective March 19, 2020, *available at* https://azgovernor.gov/executive-orders. The evidence shows that Defendant Bailey was informed by a Scottsdale police sergeant that Plaintiff had previously been warned about his non-compliance with the Governor's Executive Order, and that Defendant Bailey was given information that after Plaintiff received that notice, he again violated the Governor's Executive Order. Given the information available to Defendant Bailey,[3] it was reasonable for him to believe that Plaintiff could be arrested for a violation

---

[3] Bailey was entitled to rely on the information provided by other officers pursuant to the collective knowledge doctrine. *See, e.g. United States v. Ramirez*, 473 F.3d 1026, 1036 (9th Cir. 2007). Plaintiff makes no specific factual allegations suggesting it was unreasonable for Bailey to rely on the information provided to him by other officers about the alleged violations of the Executive Order and presents no evidence that it was unreasonable for Bailey to rely on such information. Although Plaintiff makes conclusory allegations that the Executive Order was not violated, the Court does not rely on conclusory

of Arizona Revised Statutes § 26-317 because Bailey had information that Plaintiff allegedly continued to violate the Executive Order even after receiving notice and an opportunity to comply.

Although Plaintiff argues that Bailey's subjective motivations for the arrest caused a constitutional violation, Plaintiff must prove there was no probable cause for the arrest to prove claims of retaliatory arrest or false arrest. Plaintiff appears to argue that there was no probable cause for his arrest due to a subsequent interpretation of a similar Executive Order and the fact that the charge against him was eventually dismissed.

On January 27, 2022, a Maricopa County Superior Court Judge found that Executive Order 2020-43 applied only to businesses and not individuals and therefore individuals could not be criminally responsible for violations of Executive Order 2020-43. (Doc. 54-1 at 4-13.) Although Executive Order 2020-43 is not applicable to this case, Plaintiff argues that the same reasoning applies to Executive Order 2020-09, and therefore only applies to businesses and not individuals.

Regardless of whether Plaintiff was ultimately *convicted* for a violation of the Executive Order, the Court must look to whether the law was clearly established at the time of the arrest to determine whether it was reasonable for the officer to find probable cause. *Mendoza v. Block*, 27 F.3d 1357, 1361 (9th Cir. 1994) (For qualified immunity purposes, "the contours of the right must be sufficiently clear that at the time the allegedly unlawful act is [under]taken, a reasonable official would understand that what he is doing violates that right;" and "in the light of pre-existing law the unlawfulness must be apparent.") (quotations omitted). Here, it was reasonable for Officer Bailey to rely on the language of the Executive Order that allowed for enforcement to be taken in accordance with Arizona Revised Statutes § 26-317, regardless of subsequent interpretations of the statute. *See id.*;

---

allegations when deciding either a Motion to Dismiss or Motion for Summary Judgment. Whether Plaintiff violated the Executive Order is collateral to the issues before the Court; rather, the Court must determine whether it was reasonable for Bailey to rely on the information provided to him.

*Heien v. North Carolina*, 574 U.S. 54, 68 (2014) (reasonable mistake of law cannot support a Fourth Amendment claim).

Because the evidence shows there was probable cause to arrest Plaintiff for a violation of Arizona Revised Statutes § 26-317, the Court need not address whether there was also probable cause to arrest Plaintiff for disorderly conduct in violation of Arizona Revised Statutes § 13-2904(A)(1). *See, e.g. Barry*, 902 F.2d at 773.

**D.    Count Two-Fourth Amendment Excessive Force Based on 2020 Arrest**

Defendants argue that they are entitled to summary judgment on Plaintiff's excessive force claims because Plaintiff's allegations about the force used are conclusory and the video shows that no excessive force was used.

If the alleged use of excessive force was applied during the plaintiff's arrest, the Fourth Amendment objective-reasonableness standard applies. *Graham v. Connor*, 490 U.S. 386, 388 (1989). Under this standard, a court considers certain objective factors and does not consider the defendant officer's intent or motivation. *See id.* at 397, 399 ("subjective concepts like 'malice' and 'sadism' have no proper place in [this] inquiry").

Under the Fourth Amendment standard, the reasonableness of the use of force "must be judged from the perspective of a reasonable officer at the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. When determining whether the totality of the circumstances justifies the degree of force used, the court must consider "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* The inquiry is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397 (citations omitted).

Here, the video shows that Defendant Bailey grabs Plaintiff's shirt, holds his arm, and then puts him in handcuffs. Plaintiff does not appear to be in any distress and other than falsely yelling out that he was thrown to the ground and that his glasses (while still on

his face) are in the middle of the street, Plaintiff does not verbally indicate any distress. Plaintiff complains about the officer guiding him to the car, but there is nothing from the officer's conduct that a reasonable jury would find to be forceful or excessive. Accordingly, summary judgment will be granted in favor of Defendants as to the Fourth Amendment excessive force claim.

### E. *Monell* Claim

Defendants assert that they are entitled to summary judgment on Plaintiff's *Monell* claim because Plaintiff does not adequately plead facts to support a *Monell* claim. To prevail on a *Monell* claim, Plaintiff must demonstrate that (1) he was deprived of a constitutional right; (2) the municipality had a policy or custom; (3) the policy or custom amounted to deliberate indifference to Plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation. *Mabe v. San Bernardino Cnty., Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1110-11 (9th Cir. 2001).

Plaintiff asserts that the City of Scottsdale admitted to adopting a policy of sending excessive numbers of officers to the Sushi Brokers restaurant, and Plaintiff contends that the City adopted that policy in retaliation for Plaintiff's constitutionally-protected complaints about conducting excessive traffic stops in Sushi Brokers' parking lot despite the parking lot being out of the way and difficult to get to. Plaintiff asserts that the following facts support his *Monell* claim: that "Rosenberger, Cocca, and Miller developed a pattern of repeated harassment and intimidation of Plaintiff, wherein Miller would incite Plaintiff to anger and shouting obscenities at police officers, then Miller would arrest Plaintiff for disorderly conduct without probable cause, then Cocca and Rosenberger would institute revocation proceedings against Plaintiff's liquor license, all with the goal of having Plaintiff's liquor license revoked." As noted above, any claims relating to the arrests in 2013 and 2014 are barred by the statute of limitations. Plaintiff pleads no facts and provides no evidence to support his *Monell* claim. Accordingly, summary judgment is granted as to that claim.

. . .

### F. Similarly Situated Defendants and Failure to Serve

It appears that Miller and the Jane Doe Defendants have not been timely served in this action, but they will be dismissed as similarly situated Defendants. *See Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742-43 (9th Cir. 2008) ("A [d]istrict [c]ourt may properly on its own motion dismiss an action as to defendants who have not moved to dismiss where such defendants are in a position similar to that of moving defendants.") (quoting *Silverton v. Dep't of Treasury*, 644 F.2d 1341, 1345 (9th Cir. 1981)). Plaintiff's claims against Miller appear to be based on claims for false arrest that the Court has found are barred by the applicable statute of limitations or are based on the April 2020 arrest, for which the Court has found probable cause.[4] The Jane Doe Defendants appear to have solely been named in their capacity as the spouses of Defendants Miller and Bailey and are therefore properly dismissed as well.

**IT IS HEREBY ORDERED:**

(1) The reference to the Magistrate Judge is withdrawn as to Defendants' Motion for Summary Judgment (Doc. 33) and Plaintiff's Motion to Allow Supplemental Authority (Doc. 63).

(2) Plaintiff's Motion to Allow Supplemental Authority (Doc. 63) is **denied**.[5]

(3) Defendants' Motion for Summary Judgment (Doc. 33) is **granted**, and the action is terminated with prejudice. The Clerk of Court must enter judgment accordingly.

Dated this 9th day of June, 2022.

_G. Murray Snow_
G. Murray Snow
Chief United States District Judge

---

[4] Additionally, there are no *factual* allegations suggesting that Miller was involved in the 2020 arrest; rather, Plaintiff makes the conclusory assertion that Bailey knew about Miller's animus toward Plaintiff and that is why Bailey arrested Plaintiff.

[5] Plaintiff shows no cause for submitting supplemental authority months after the completion of briefing on the Motion for Summary Judgment.

- 13 -